2050

The STATE, Respondent v. Alvin WEST, Appellant.

(438 S.E. (2d) 256)

Court of Appeals

*Asst. Appellate Defender Robert M. Dudek, South Carolina Office of Appellate Defense,* Columbia, and *Laurie Proctor, Asst. Public Defender,* Charleston, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Deputy Atty. Gen. Salley W. Elliott,* Columbia, and *Sol. David P. Schwacke,* North Charleston, *for respondent.*

Heard June 8, 1993.

Decided July 12, 1993.

Am. Op. Ref. on Den. of Reh. Nov. 3, 1993.

SHAW, Judge:

Appellant, Alvin West, was convicted of criminal sexual conduct with a minor. We affirm.

West raises two issues on appeal. He asserts error in the admission of videotaped testimony of the child victim. He further asserts error in the admission of testimony that the child victim was seeing a psychologist.

## VIDEOTAPED TESTIMONY

The record reveals that prior to trial, the State moved to allow the videotaped testimony of the child victim to be introduced at trial in lieu of in-court testimony. At a hearing on the matter, the trial judge heard testimony from the victim's treating psychologist[1] as well as interviewed the victim in chambers. Dr. Foster, a licensed psychologist with degrees in business, social services, nursing and psychology testified she had been treating the four-year-old victim and she diagnosed the victim as suffering from post traumatic stress disorder and from attention deficit disorder with hyperactivity. Dr. Foster stated children with attention deficit disorder with hyperactivity have very short attention spans making it extremely difficult for them to focus, that the victim would have difficulty testifying in front of a jury in a crowded courtroom because it would be too distracting and the child would be unable to focus, and that the more activity there was going on, the greater would be her inability to focus. She further indicated the nature of the testimony would have an impact on her ability to testify in an open courtroom as well as the presence of "twelve other people." In essence, she testified the presence of the jurors would be too much distraction for the child. Following an interview of the child in chambers, the State argued that the child's tender age, the sensitive nature

---

[1] West asserts in his brief that "[t]here is no indication appellant ever stipulated Foster was an expert, or that the judge so qualified her." However, the record shows the State indicated there was a stipulation that Dr. Foster was an expert and the trial judge accepted that stipulation finding Dr. Foster to be an expert clinical psychologist. There is no indication West challenged this stipulation or finding.

of her testimony, and the fact that the child suffers from hyperactivity made the child a special witness warranting a videotaped deposition of the child's testimony in a smaller room with less distraction, but allowing West to be present. The State then noted to the court, "You can see that she has trouble sitting in a seat for any amount of time." The court then agreed with that assessment.

After taking the matter under advisement, the trial judge issued his order allowing the victim's testimony to be videotaped pursuant to S.C. Code Ann. § 16-3-1530 (Cumm. Supp. 1992) citing evidence that the child suffered from attention deficit disorder and hyperactivity, that it would be extremely difficult for the child to focus in an open courtroom with the nature of the testimony creating further difficulty, and that it would be contrary to the child's best interest to testify in open court.

In West's presence, following a finding that the child was competent as a witness, the victim's videotaped deposition was taken. The victim testified that West "touched [her] tutu" with his hands, that it hurt on the inside of her "tu-tu" and that he touched her on "two days." At the outset of the presentation of evidence, the videotaped deposition of the victim was played for the jury. Subsequent to the jury retiring for deliberations, the videotape was played again at the request of the jury.

West argues the trial judge erred in allowing the videotaped testimony of the child arguing that live testimony is always preferred and the reasons espoused by the State were insufficient to dispense with the preferred live testimony. We disagree.

S.C. Code Ann. § 16-3-1530(G) (Cumm. Supp. 1992) provides as follows:

> VICTIMS AND WITNESSES WHO ARE VERY YOUNG, ELDERLY, WHO ARE HANDICAPPED OR WHO HAVE SPECIAL NEEDS, HAVE A RIGHT TO SPECIAL RECOGNITION AND ATTENTION BY ALL CRIMINAL JUSTICE, MEDICAL, AND SOCIAL SERVICE AGENCIES.

The court shall treat "special" witnesses sensitively, using closed or taped sessions when appropriate. The solicitor or de-

fense shall notify the court when a victim or witness deserves special consideration.

Our Supreme Court has, on several occasions, upheld the use of videotaped depositions pursuant to this statute. *See State v. Murrell,* 302 S.C. 77, 393 S.E. (2d) 919 (1990); *State v. Bradley,* 293 S.C. 526, 362 S.E. (2d) 19 (1987); *State v. Cooper,* 291 S.C. 351, 353 S.E. (2d) 451 (1987). In *Cooper,* the Supreme Court stated that the discretion afforded the trial judge pursuant to this statute allows "the utilization of modern technology so as to enhance the truth-determining quality which marks a fair trial" and, while live testimony is always preferred, other techniques may be used when, "in the exercise of a sound discretion, the trial judge deems them appropriate and adequate." In *Murrell,* the Supreme Court set forth the procedure to be followed for use of videotaped testimony holding that the trial judge must make a case-specific determination of the need for videotaped testimony, place the child in as close to a courtroom setting as possible, and assure the defendant is able to see and hear the child, has counsel present in the courtroom and with him and communication is available between counsel and the defendant.

West does not challenge the courtroom setting requirements. Neither does he argue he was unable to see or hear the child or was cut off from counsel, as he was present in the room with his counsel while the child's videotaped deposition was taken. Rather, he argues the special needs requirement was not met and there was no evidence the child was afraid of him or would be traumatized by his presence.

While the cases in this area have generally dealt with videotaped depositions taken outside the presence of the defendant because of the child's fear of the defendant and traumatization in the defendant's presence, nothing in the statute or case law limits the case specific finding of necessity to such a situation. There is more than ample evidence of the need of videotaped testimony in the case at hand. The statute itself specifically addresses the concern for victims and witnesses who are young or have special needs. Inasmuch as there was no showing the child feared the defendant or was traumatized by his

presence, the court safeguarded his right to be present during the videotaped deposition.

Under the facts of this case, we find no abuse of discretion in the utilization of the child victim's videotaped testimony.

## PSYCHOLOGIST REFERENCE

The mother of the victim testified at trial. During direct examination, she testified that, upon suspicion that her child had been molested, she contacted the police and had the child examined at the hospital. the following colloquy then occurred.

> Q. What did you do that evening? Did you have any follow-up treatment, medical treatment?
>
> A. Yes. We're Navy dependents and she was two weeks later also treated by the Navy doctors. And we've also been seeing Dr. Foster.
> Ms. Proctor: Objection, your honor.
> The Court: What is the statement?
> Ms. Proctor: Your honor, may we approach the bench at this time?
> The Court: Yes. (Whereupon, a bench conference was had)
>
> Q. Okay. What was the follow-up?
>
> A. We went two weeks later to the Navy doctors to make sure that the redness and the soreness was going away. And also we'd been seeing Dr. Evelyn Foster who is a psychologist.

In the jury's absence, West later put his bench conference objection on the record arguing the reference to the child seeing a psychologist served to bolster the victim's testimony and was "getting dangerously close to posttraumatic syndrome testimony." The trial judge noted the objection and stated, "You made your objection before she testified, and I said— the court said that if that's all she was going to say I wasn't going to send the jury out to hear that, that that was not prejudicial . . . ."

On appeal, West asserts that the testimony of the child's mother that the child was seeing a psychologist was admitted to bolster the child's testimony in contravention of *State v. Hudnall*, 293 S.C. 97, 359 S.E. (2d) 59

(1987) and *State v. Bradley,* 293 S.C. 526, 362 S.E. (2d) 19 (1987). We disagree. In *State v. Hudnall* and *State v. Bradley* the court held expert testimony regarding common behavioral characteristics exhibited by child victims of sexual abuse was not admissible to establish abuse had occurred. Recently, our Supreme Court in *State v. Schumpert,* — S.C. —, 435 S.E. (2d) 859 (1993) limited the ruling in these cases:

> In *State v. Alexander,* 303 S.C. 377, 401 S.E. (2d) 146 (1991), however, we held trauma testimony of a rape victim is relevant to prove the elements of criminal sexual conduct since such evidence makes it more or less probable that the offense occurred. We further held such evidence admissible where its probative value outweighs its prejudicial effect. *Id.* We now expressly overrule *State v. Hudnall* to the extent it is inconsistent with *State v. Alexander* and clarify that both expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect.[2]

Here there was no expert testimony regarding common behavioral characteristics. The objectionable testimony is the mere reference by the mother to the fact the child had seen or was seeing a psychologist. Even if we were to find the testimony somehow relates to the objectionable practice proscribed in *State v. Hudnall,* we hold its probative value outweighed the illusory prejudicial effect of the testimony and, thus, is admissible under *State v. Schumpert.* Accordingly, West's conviction is

Affirmed.

CURETON and GOOLSBY, JJ., concur.

---

[2] A footnote to the decision states *State v. Bradley* and *State v. Rogers,* 293 S.C. 505, 362 S.E. (2d) 7 (1987) are also overruled to the extent they are inconsistent with the opinion.