536 S.E.2d 392

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Respondent,

v.

Scott WILSON and Sharon Zimmer, of whom
Scott Wilson is the, Appellant.

In the interest of A minor under the age 18.

No. 3225.

Court of Appeals of South Carolina.

Heard June 7, 2000.
Decided July 17, 2000.
Rehearing Denied Oct. 7, 2000.

H. Stanley Feldman, of N. Charleston; and Kelley M. Braithwaite, of Columbia, for appellant.

Carol A. Miller, of SC Department of Social Services, of Beaufort, for respondent.

GOOLSBY, Judge:

Scott Wilson appeals a family court order finding he abused and neglected his minor daughter and directing his name be entered in the Central Registry of Child Abuse and Neglect pursuant to South Carolina Code section 20–7–650(K) (Supp. 1999).[1] We reverse and remand.

## FACTS

The South Carolina Department of Social Services (DSS) instituted this child-abuse intervention action in the interest of a female child against her parents, Scott Wilson and Sharon Zimmer. The complaint alleged, among other things, that the child was at risk of sexual abuse by the father. Neither the father nor the mother answered the complaint.

At the beginning of the intervention hearing, counsel for DSS made an oral motion to have the child testify outside the visual presence of the father. As grounds for the motion, counsel for DSS stated, "[M]y first witness shall be the minor child in this action. She is seventeen years old; she just turned seventeen. This [involves] allegations regarding sexual abuse [and a] threat of sexual abuse, and she does not want to testify in front of her father." Counsel for DSS informed the

---

1. S.C.Code Ann. § 20–7–650(K)(1) (Supp.1999) requires that the court "order that a person be entered in the Central Registry of Child Abuse and Neglect if it finds that there is a preponderance of evidence that the person physically or sexually abused or wilfully or recklessly neglected the child...." This information remains in the Registry for seven years from the date services are terminated. S.C.Code Ann. § 20–7–680(E) (Supp.1999).

court that she had made arrangements to have the father placed in a room where he could hear the child's testimony but would not be in view of her. Additionally, DSS sought leave for the father to consult his counsel after direct examination and again after cross-examination.

The father objected to this motion, arguing it denied him his right of confrontation. The family court, however, granted the motion over the father's objection, observing, "Well [counsel for the father] can be present, but if [the father] can hear it . . . I mean that's . . . enough of a right of confrontation. As long as he can hear it and make sure he can hear it, I'm going to grant the motion." No further proceedings were held or discussion had regarding the motion.

The child then testified outside the father's presence about three alleged incidents of improper "touchings" occurring when the child was between the ages of thirteen and seventeen. Thereafter, the family court issued the appealed order.

### LAW/ANALYSIS

■ The father alleges the family court's decision to allow the child to testify outside his presence violated due process because it denied him the right of confrontation. We agree.

In *South Carolina Department of Social Services ex rel. Texas v. Holden,*[2] our supreme court acknowledged, "The right to confrontation, although historically limited to criminal prosecutions, has been applied in the civil context."[3] In determining when this right should attach, the court in *Brown v. South Carolina State Board of Education*[4] held, "Where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."[5]

---

**2.** 319 S.C. 72, 459 S.E.2d 846 (1995).

**3.** *Id.* at 78, 459 S.E.2d at 849.

**4.** 301 S.C. 326, 391 S.E.2d 866 (1990).

**5.** *Id.* at 329, 391 S.E.2d at 867; *see also State ex rel. Medlock v. Nest Egg Society Today, Inc.,* 290 S.C. 124, 348 S.E.2d 381 (Ct.App.1986) (holding defendants were entitled as a matter of due process to have the State produce its witnesses at trial because confrontation and cross-

We must decide, then, whether due process required in the instant case that the father be given the opportunity to confront a witness against him, namely, the child.[6] We hold that it did so. The proceeding was one in which important decisions depended upon questions of fact.[7] Also, it involved a matter "of more than ordinary gravity" and one that could leave a permanent mark upon the father.[8]

---

examination of adverse witnesses may be elements of a meaningful opportunity to be heard guaranteed by the Due Process Clause of the Constitution).

**6.** Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. *Holden,* 319 S.C. at 78, 459 S.E.2d at 849 (quoting *South Carolina Nat'l Bank v. Central Carolina Livestock Market,* 289 S.C. 309, 345 S.E.2d 485 (1986)).

**7.** *See Brown,* 301 S.C. at 329, 391 S.E.2d at 867 (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and holding that where "important" decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses).

**8.** *Edward E. v. Department of Soc. Servs.,* 42 Mass.App.Ct. 478, 678 N.E.2d 163, 168 (1997) ("[T]he evidence upon which the department relied was so persistently encumbered by unreliability that it fails to have the character of substantiality which would support the department's decision to place the father's name on its registry of alleged perpetrators for a period of seventy-five years. That was a decision, we may add, of more than ordinary gravity in that it places a permanent mark on a person."); *see also, In re A.S.W,* 834 P.2d 801, 805 (Alaska 1992) ("A civil litigant's right to confront witnesses is . . . founded upon notions of procedural due process. Therefore the question is not whether [the father] is guaranteed a constitutional right to confront adverse witnesses, but whether due process, in this case, necessitates that [he] be afforded the right to cross-examine his daughter.") (internal citations omitted); *Truman v. Watts,* 598 A.2d 713, 719 (Del.Fam.Ct. 1991) ("[T]he question is . . . whether due process in this case necessitates that [the appellant] be afforded the right to cross-examination. This is a determination that must be made in light of the particular facts and circumstances of each case."); *In Interest of M.S.,* 178 Ga.App. 380, 343 S.E.2d 152, 153 (1986) ("[T]he argument that termination proceedings are 'entirely civil in nature' will not support the conclusion that the appellants in this case had no due process right to confront the witnesses. . . ."); *White v. White,* 40 Mass.App.Ct. 132, 662 N.E.2d 230, 237 (1996) ("Due process concerns and fundamental fairness require that a parent have an opportunity effectively to rebut adverse allegations concerning child-rearing capabilities, especially in a proceeding that can terminate all legal parental rights."); *M.L.L. v. Wessman (In re J.S.P.L.),* 532 N.W.2d 653, 660 (N.D.1995) ("A civil litigant's right to

South Carolina Code section 16–3–1550(E) (Supp.1999) requires the family court to "treat sensitively witnesses who are very young ... by using closed or taped sessions when appropriate." [9] In *State v. Murrell,* [10] our supreme court set forth specific procedures to which a trial court must adhere to ensure protection of these child witnesses:

First, the trial judge must make a case-specific determination of the need for videotaped testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. Second, the

confront and cross-examine witnesses is generally secured by concepts of due process. . . . [T]he right to confront witnesses is not an express constitutional right in civil cases, but ... the denial of the opportunity to cross-examine in a civil case affecting the parent-child relationship ... raise[s] significant due process problems."); *A.Y. v. Department of Pub. Welfare,* 537 Pa. 116, 641 A.2d 1148, 1152 (1994) ("[W]e emphasize that an accused person even in the context of a 'non-criminal' proceeding is not without his or her rights to due process. Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature."); *In re James A.,* 505 A.2d 1386, 1390 (R.I.1986) ("[T]he question before us is not whether the father is guaranteed a constitutional right of confrontation or cross-examination in the civil context but rather whether due process in this case necessitates the father's being afforded the right to cross-examination."). *Cf. In re Mary S.,* 186 Cal.App.3d 414, 230 Cal.Rptr. 726, 729 (1986) ("Unlike at a criminal proceeding where an express constitutional right to confrontation exists, at a civil proceeding the constitutional right involves general notions of procedural due process."); *In Interest of Long,* 313 N.W.2d 473, 478 (Iowa 1981) ("We observe that the right of confrontation is derived from the sixth amendment, which applies to criminal or quasi-criminal proceedings. A CHINA [child in need of assistance] proceeding is neither criminal nor penal in character. . . . Nevertheless, because a CHINA proceeding may be the first step toward a termination of fundamental parental rights, we will proceed on the assumption that confrontation rights are applicable to such a proceeding.") (internal citations omitted); *In re Mental Health of D.B.W.,* 616 P.2d 1149, 1152 (Okla.1980) ("The question is not whether the proceeding is civil or criminal. The matters to be considered are what rights are at stake; how great the infringement on the individual's fundamental freedoms, and what deleterious effects or punishment can stem from the proceedings. These determinations, and not the label the proceedings bear, mandate whether due process procedures are required.").

9. S.C.Code Ann. § 16–3–1550(E) (Supp.1999).

10. 302 S.C. 77, 393 S.E.2d 919 (1990).

court should place the child in as close to a courtroom setting as possible. Third, the defendant should be able to see and hear the child, should have counsel present both in the courtroom and with him, and communication should be available between counsel and appellant.[11]

 A trial court's decision to allow testimony outside the presence of the defendant pursuant to section 16–3–1550(E) may be reversed only upon a showing that the trial court abused its discretion in making the decision or in implementing the appropriate procedure once the decision has been made.[12]

Here, even the most liberal reading of the record reveals the family court failed to follow the prescribed procedure both in making the decision to allow the child to testify outside the father's presence and in implementing the procedure by which testimony was taken. The family court made no fact-specific determination of the need for the child to testify outside the father's presence.[13] Indeed, no testimony was offered as to the degree of any trauma the child would suffer if made to testify in the father's presence. Rather, the court simply accepted counsel for DSS's statement that the child "does not want to testify in front of her father." Furthermore, the father was not placed in a position allowing him to view the child during her testimony, and he did not have counsel both with him and in the courtroom while the child testified.

We hold the family court denied the father due process by refusing to allow him to confront the child.[14] Given our

11. *Id.* at 80–81, 393 S.E.2d at 921.

12. *Id.*

13. We question whether the statute should have been applied to this witness who was seventeen years old at the time of the trial. The statute protects only children who are "very young" absent a handicap or special needs. S.C.Code Ann. § 16–3–1550(E) (Supp.1999).

14. *Cf. State v. Rogers,* 293 S.C. 505, 508, 362 S.E.2d 7, 9 (1987) (holding a trial judge's general remarks about "children feeling uncomfortable testifying in open court in these types of cases" were insufficient to warrant denying the defendant the right to confront his witness absent specific factual findings of necessity in using videotape for this particular witness) *overruled on other grounds by State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Bray,* 335 S.C. 514, 524,

disposition, we need not address the father's remaining issues on appeal.

**REVERSED AND REMANDED.**

CURETON and SHULER, JJ., concur.

517 S.E.2d 714, 719 (Ct.App.1999) (holding a defendant's right to confront a witness against him is violated when a trial judge does not personally interview the child witness regarding his or her ability to testify in court unless "the considered testimony is strong, specific, and persuasive about the child's fear of the defendant and the harm the child will suffer if forced to testify in front of the accused").