0686

Appeal of Juanita K. BROWN,
(Two Cases).
In re Janet F. LUNDH, Respondent
v.
Andrew William FONTANA, Testator.
In re Joseph James FONTANA, Respondent
v.
Andrew William FONTANA, Testator.
(343 S. E. (2d) 649)

Court of Appeals

*Jay E. Hodge, Jr.,* Cheraw, *for appellant.*

*Joseph J. Fontana, pro se.*

*Edward E. Saleeby, Jr.,* Hartsville, and *Randall M. Chastain,* Columbia, *for respondent Lundh.*

Heard Feb. 24, 1986.

Decided April 21, 1986.

CURETON, Judge:

This is a consolidated appeal of two circuit decrees which affirmed orders of the probate court charging the decedent Andrew William Fontana's estate with claims for child support arrearages and rent due the decedent's brother, respondent Joseph James Fontana. The probate court also found that certain personal property used by the decedent prior to his death was owned jointly by decedent and his

brother. The executrix, sole heir of decedent, appeals. We affirm.

Andrew William Fontana died testate on June 22, 1982 naming appellant Juanita K. Brown as his executrix and sole heir. Respondent Janet F. Lundh, a former wife of Andrew, filed a claim against his estate for child support arrearages that had accrued since Andrew and Lundh were divorced in New Jersey in 1962. The terms of the divorce decree provided that Andrew would pay Lundh $15.00 per week per child until each of the couple's four children reached age eighteen. The youngest of the couple's children attained age eighteen in 1981. According to calculations made by the Passaic County New Jersey Probation Department, the total arrearage owed by Andrew was $37,656.00.

Lundh testified that she has been unable to locate Andrew from the time he disappeared in 1963 until 1972 when she learned that her former husband was living in South Carolina. In 1966 Andrew was awarded full disability benefits by the Social Security Administration. Lundh testified that she received social security benefits in the amount of approximately $90.00 per month for the benefit of the children until each child reached the age eighteen. The record does not indicate when Lundh began receiving social security benefits or the total benefits received by Lundh for the children.

As executrix, Brown rejected Lundh's claim for child support arrearages on the basis that the claim was barred by laches and the statute of limitations. She also requested the amount of the claim be reduced due to Andrew's disability. The probate judge rejected those grounds as a basis for denying or reducing the amount of Lundh's claim. On appeal to the circuit court, the circuit judge affirmed the order of the probate judge.

Joseph Fontana and Andrew Fontana were brothers and sole heirs of their father, William Fontana, who died intestate in 1975. Andrew was named temporary administrator of the father's estate. In this action, Joseph Fontana requested the probate court to order Andrew's estate to pay rent for a store owned by the father's estate and occupied by Andrew until his death. Joseph also requested reimbursement for Andrew's use of personal property owned by the father's

estate. From an order disposing of these issues, Brown appealed, but has now abandoned her appeal on these issues. Further in her appeal to the circuit court, Brown has also abandoned her claim regarding the applicability of the statute of limitations.

Brown has framed the following issues for review by this court in her exceptions: (1) whether the trial judge should have offset the amount of social security benefits received against Lundh's claim; (2) whether the trial judge erred in finding that Andrew was not disabled; (3) whether the trial judge should have found that laches barred Lundh's claim; and (4) whether the probate court had jurisdiction to entertain an action for the collection of a debt that has not been reduced to judgment.

In considering this appeal, we are bound by the settled principle of law that the circuit court and likewise this court on appeal has no authority to overrule findings of fact made by the probate court unless found to be "manifestly erroneous." *Payton v. Payton,* 270 S. C. 275, 241 S. E. (2d) 901 (1978) citing *Ex parte Blizzard,* 185 S. C. 131, 193 S. E. 633 (1937). Because Lundh did not request a jury trial in her appeal to the circuit court, the circuit court was limited in its review of the probate court's evidentiary rulings to the record made before the probate judge. 270 S. C. at 275, 241 S. E. (2d) at 903.

We address first the issue of whether the trial judge should have offset the support arrearages by the amount of the social security benefits received by Lundh. Of course, a court of equity has jurisdiction to modify child support payments retrospectively upon a proper showing of altered circumstances. *Johnson v. Johnson,* 196 S. C. 474, 13 S. E. (2d) 593 (1941); *Ex Parte Jeter,* 193 S. C. 278, 8 S. E. (2d) 490 (1940). Moreover, while the courts of this state have not decided the question of whether a testator's executrix may apply for a retroactive modification of such payments, the general law appears to be that when a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment, to the extent just and appropriate under the circumstances. 24 Am. Jur. (2d) *Divorce and Separation* Section 1048 at 1039 (1983).

We do not understand Brown to argue the probate court's jurisdiction to modify Andrew's child support award retrospectively. Her argument is that the probate court abused its discretion by not offsetting past due child support by the social security payments. While there was a showing that Andrew received social security disability benefits, there was no showing that he was unable to pay the support payments. Indeed, the evidence showed that though considered disabled by Social Security Administration standards, he simultaneously owned and operated two businesses. Further, there has been no showing that Andrew's income diminished after he began receiving social security benefits. Additionally, the record is lacking in critical evidence of the amount of social security actually paid for the benefit of Andrew's children. The appellant bears the burden of presenting an adequate record for appellate review. *Dargan v. Metropolitan Properties, Inc.*, 243 S. C. 324, 133 S. E. (2d) 821 (1963). We do not find the probate court's holding manifestly erroneous on this issue.

Brown appears to also argue that she is entitled to an offset of the social security benefits as a matter of law. We disagree. In *Justice v. Scruggs*, 286 S. C. 165, 332 S. E. (2d) 106 (Ct. App. 1985), we held that a parent is entitled to credit on his child support payments for disability benefits paid for the support of his children. In *Justice*, however, the evidence showed that the supporting parent was unable to work. The trial court concluded the father's "poor health constituted a change in circumstances warranting a modification of the original award." Conversely, here the evidence supports the probate judge's finding that Andrew was gainfully employed during the period in question even though he may have been sufficiently disabled to qualify for social security benefits. *Justice* does not hold that the supporting parent is entitled to credit for social security payments as a matter of law, but rather holds that a family court judge should consider such payments as a circumstance that may justify a modification of support payments. *See* 24 Am. Jur. (2d) *Divorce and Separation* Section 1076 (1983).

Brown next argues that the probate court erred in finding that Andrew was not disabled, and "to use this finding in

upholding an award of past due child support benefits to [Lundh]." Our review of the probate court's order does not disclose a finding that Andrew was not disabled. Its holding is simply that "this case is replete with the testimony showing that the testator was gainfully employed operating not one business, but two." We discern from Brown's brief that her argument is premised upon abuse of discretion only. She does not argue that the administrative ruling by the Social Security Administration is res judicata. We find no abuse of discretion. There is ample evidence in the record that Andrew was gainfully employed.

We now consider Brown's contention that laches barred Lundh's claim. Laches denotes negligent failure to act for an unreasonable length of time and failure to act where there was an opportunity to act sooner. *Burnett v. Holliday Brothers, Inc.,* 279 S. C. 222, 305 S. E. (2d) 238 (1983). Mere lapse of time alone is an insufficient basis to support a claim of laches in an action to enforce a support order. *Larsen v. Sedberry,* 54 N. C. App. 166, 282 S. E. (2d) 551, *review denied,* 304 N. C. 728, 288 S. E. (2d) 381 (1981). See *Brock v. Kirkpatrick,* 72 S. C. 491, 503-04, 52 S. E. 592 (1905). "In order that the defense of laches may be sustained, the circumstances must have been such as to import that the complainant has abandoned or surrendered the claim or right which he now asserts." *Byars v. Cherokee County,* 237 S. C. 548, 118 S. E. (2d) 324, 330 (1961). By arguing that the evidence is conflicting as to whether Lundh made a reasonable effort to locate and procure support from Andrew, Brown implicitly admits that Lundh made some effort to secure support from her former husband. Moreover, assessing the credibility of witnesses is primarily a function of the trial court, not this court on appeal. *Collins v. Collins,* 283 S. C. 526, 324 S. E. (2d) 82, 84 (Ct. App. 1984). We hold that Lundh's actions were not consistent with an abandonment of her rights to receive support and thus the probate court's findings are not manifestly erroneous.

Brown's argument that the probate court lacks jurisdiction to consider Lundh's claim is without merit. Her argument is premised first upon the contention that accrued child support is not a debt as contemplated by Section 21-15-610, 1976 Code of Laws of South Carolina, and

secondly, the family court has exclusive jurisdiction to enforce support judgments of sister states. A foreign divorce decree providing for monthly installments of child support is a "final decree." *See Johnson v. Johnson,* 194 S. C. 115, 8 S. E. (2d) 351 (1940). The courts of this state are required to give full faith and credit to valid final decrees from other states including decrees ordering payment of child support. *Walker v. Frericks,* 285 S. C. 139, 328 S. E. (2d) 126 (Ct. App. 1985); *Marshall v. Marshall,* 282 S. C. 336, 318 S. E. (2d) 133, 136 (Ct. App. 1984).

Brown cites *Powers v. Superior Court of Shasta County,* 253 Cal. App. (2d) 617, 61 Cal. Rptr. 433 (1967), for the proposition that accrued child support does not constitute a debt. Recently, our Supreme Court construed the definition of "creditor" contained in Section 21-15-640, 1976 Code of Laws of South Carolina, to include the possessor of an unliquidated tort claim. *Moultis v. Degen,* 279 S. C. 1, 301 S. E. (2d) 554, 557 (1983). We decline to adopt the holding of the *Powers'* court. Instead, we hold that where the obligor parent has "not paid all sums due prior to his death, under an order for the support of his child in a proceeding for a divorce or separation, the amount of the arrears is a proper claim against his estate." 24 Am. Jur. (2d) *Divorce and Separation* Section 1058 (1983); Annot. 18 A.L.R. (2d) 1126, 1137 Section 6 (1951). We refuse to require, as do some jurisdictions, that the person owed the support obtain a judgment in South Carolina for the amount of the arrears; then present that judgment as a claim to the personal representative of the defaulting parent before it can constitute a claim against the defaulting parent's estate. *See Adair v. Martin,* 595 S. W. (2d) 513 (Tex. Sup. Ct. 1980) *reversing* 582 S. W. (2d) 547 (Tex. Civ. App. 1979).

Accordingly, the order of the trial court is

Affirmed.

GOOLSBY J., and LITTLEJOHN, Acting Judge, concur.